# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALLAN BRENT NEWTON,** | : | **Civil No. 1:19-CV-01064** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | (Chief Magistrate Judge Schwab) |
| **ANDREW SAUL** | : | |
| **COMMISSIONER** | : | |
| **OF SOCIAL SECURITY** | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION AND ORDER
November 24, 2020

## I.    Introduction.

The plaintiff, Allan Newton ("Mr. Newton"), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying him claims for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act.  We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons that follow, we conclude that the Commissioner's decision is supported by substantial evidence.  Thus, we affirm the Commissioner's decision.

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 8-1* to *8-41*.[1]  On February 29, 2008, Mr. Newton filed a Title II application for a period of disability and Disability Insurance Benefits ("DIB"). *Admin. Tr.* at 112.  Mr. Newton also filed a Title XVI application for Supplemental Security Income ("SSI"). *Id.*  In both applications, Mr. Newton alleged disability beginning December 10, 2007. *Id.*  Both of Mr. Newton's claims were denied on May 29, 2008. *Id.*  On July 21, 2009, a hearing was held before Administrative Law Judge Richard Zack ("ALJ Zack"). *Id.*  On February 9, 2010, ALJ Zack found that Mr. Newton had not been disabled from December 10, 2007 through February 9, 2010. *Id.* at 113.

On April 26, 2010, Mr. Newton again applied for DIB and SSI, alleging disability beginning December 10, 2008. *Id.* at 161-170.  After his applications were denied, he requested a hearing on September 10, 2010. *Id.* at 123-136.  The second hearing was held before ALJ Ronald Sweeda ("ALJ Sweeda") on August 9, 2011. *Id.* at 47-100.  On August 23, 2011, ALJ Sweeda issued a decision finding

---

[1] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Mr. Newton's claims.

2

that Mr. Newton was not disabled from December 10, 2008 through August 23, 2011. *Id*. at 28-46.  Mr. Newton requested review by the Appeals Council on September 6, 2011. *Id*. at 24-27.  On November 21, 2012, the Appeals Council denied Mr. Newton's request, thereby affirming ALJ Sweeda's decision. *Id*. at 1-6. Mr. Newton then filed a civil action pursuant to 42 U.S.C. § 405(g), and this court reversed and remanded for a new hearing and decision on February 18, 2015. *Id*. at 973-1016.

Mr. Newton's third hearing was held before ALJ Edward L. Brady ("ALJ Brady") on March 22, 2016. *Id*. at 856-891.  On May 24, 2016, ALJ Brady issued a partially favorable decision, finding that Mr. Newton became disabled on March 24, 2013, but was not disabled prior to that date. *Id*. at 809-832.  Because the Appeals Council denied Mr. Newton's request to review the decision, the ALJ's decision became the final decision of the Commissioner on July 24, 2016. *Id*. at 810-811.  Mr. Newton then commenced another civil action, and this court vacated the decision and remanded for a new hearing on March 5, 2018. *Id*. at 1952-91.

Pursuant to the District Court remand order, ALJ Brady was directed to properly address the opinion of Dr. Jyoti Shah, Mr. Newton's treating psychiatrist, and Dr. Charles LaJeunesse, the psychological consultative examiner. *Id* at 1841. Specifically, the District Court requested that ALJ Brady further explain his

3

reasoning and to consider all of the evidence before him. *Id*. at 1979.  Additionally,

ALJ Brady was instructed to address the arguments regarding the prior medical

expert, Dr. Jeffrey Fremont and his July 2009 testimony. *Id*.  The relevant period

for review was limited to February 10, 2010 to March 23, 2013. *Id*.  ALJ Brady

held a hearing on January 17, 2019, at which Mr. Newton appeared with counsel.

*Id*. at 1895-1927.  Ann Morris, an impartial medical expert, and Nadine Henzes, an

impartial vocational expert also appeared. *Id*.  ALJ Brady issued a decision finding

that Mr. Newton was not disabled from February 10, 2010 through March 23,

2013. *Id*. at 1837-63.  The ALJ found that Mr. Newton was capable of making a

successful adjustment to other work that exists in significant numbers in the

national economy. *Id*. at 1855.  Because the Appeals Council declined to review

the ALJ's decision, his decision became the final decision of the Commissioner by

operation of law on May 1, 2019. *Id*. at 1838.

In June of 2019, Mr. Newton initiated this action by filing a complaint

requesting that the Court reverse the ALJ's decision or, in the alternative, remand

the case to the Commissioner for a new hearing. *Doc. 1*.  The Commissioner filed

an answer and a certified transcript of the administrative proceedings. *Docs. 7, 8*.

The parties then consented to proceed before a magistrate judge pursuant to 28

U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 13.* The

parties filed briefs, and this matter is ripe for decision. *Docs. 12, 17.*

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's

application for benefits, "the court has plenary review of all legal issues decided by

the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

But the court's review of the Commissioner's factual findings is limited to whether

substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v.

Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary

sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence

"means—and means only—'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of

New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir.

1993).  But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's] finding

from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this Court, therefore, is not whether Mr. Newton was disabled, but whether substantial evidence supports the Commissioner's finding that he was not disabled and the Commissioner correctly applied the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

## B.  Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

To receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).  Unlike with disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).  Supplemental Security Income "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id.*

In determining whether the claimant is disabled, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step four, the ALJ must also assess a claimant's RFC. *See Hess v. Comm'r Soc. Sec.,* 931 F.3d 198 n.2. (3d Cir. 2019).  RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

8

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. 42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. §§ 404.1512, 416.912; *Mason*, 994 F.2d at 1064. Once the claimant meets this burden, the burden shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform and that are consistent with the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the

9

reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision Denying Mr. Newton's Claim.

On March 6, 2019, ALJ Brady denied Mr. Newton's claim for benefits. *Admin. Tr.* at 1856.  Applying the sequential-evaluation process, the ALJ determined that Mr. Newton was not disabled within the meaning of the Social Security Act from December 10, 2008 to March 24, 2013.  The ALJ found that Mr. Newton met the insured status requirements of the Social Security Act through March 31, 2012. *Id*. at 1843.

At step one of the sequential-evaluation process, the ALJ found that Mr. Newton had not engaged in substantial gainful activity since February 10, 2010, the amended alleged onset date. *Id*. at 1844.

At step two of the sequential-evaluation process, the ALJ found that Mr. Newton had the following severe impairments: schizoaffective disorder, coronary artery disorder, obesity, left rotator cuff tear, degenerative joint disease of the bilateral knees, and a history of substance abuse. *Id.* at 1844.  The ALJ determined that these "impairments significantly limit the ability to perform basic work activities as required by SSR 85-28." *Id.*

10

At step three of the sequential-evaluation process, the ALJ found that Mr. Newton did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ considered Mr. Newton's mental impairments and found that they did not meet or medically equal the criteria of listings 12.03 and 12.04. *Id.* at 1845. The ALJ considered whether the Mr. Newton's impairments satisfied the paragraph B criteria, which holds that the mental impairments must result in at least one extreme or two marked limitations in a broad area of function. *Id.* These areas are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. *Id.* at 1845-1846.

For understanding, remembering, or applying information, the ALJ determined that Mr. Newton has a moderate limitation. *Id.* at 1846. In interacting with others, the ALJ determined that Mr. Newton has a moderate limitation. *Id.* Regarding concentrating, persisting, or maintain pace, the ALJ determined that Mr. Newton has a moderate limitation. *Id.* For adapting or managing oneself, the ALJ determined that Mr. Newton has experienced a mild limitation. *Id.*

The ALJ also considered whether Mr. Newton's depressive disorder satisfied the paragraph C criteria. *Id.* The ALJ determined that the evidence did

not establish that Mr. Newton's mental disorder is serious and persistent. *Id*.

Regarding Mr. Newton's schizophrenia, the ALJ found that the evidence of

auditory hallucinations satisfied the subparagraph A requirements; however, it did

not satisfy the requirements of subparagraph B or C. *Id*. at 1846-1847.  The ALJ

stated that "[t]he claimant does not have an extreme limitation of one or marked

limitation of two of the following areas of mental functioning: 1. Understand,

remember or apply information, 2. Interact with others, 3. Concentrate, persist, or

maintain pace, and 4. Adapt or manage oneself." *Id* at 1847.

At step four of the sequential-evaluation process, the ALJ assessed Mr.

Newton's RFC.  The ALJ determined that Mr. Newton has the RFC to perform

light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except:

> The claimant can perform no overhead work, no crawling, no
> kneeling and no climbing on ladders, ropes or scaffolds. The
> claimant is limited to simple, routine work generally described
> as unskilled with few work place changes in a routine work
> setting. The claimant is limited to jobs that are low stress
> described as having no production rate pace requirement. The
> claimant must have no interaction with the public and
> occasional interaction with co-workers and supervisors.

*Id*. at 1847.

In arriving at Mr. Newton's RFC, the ALJ followed a two-step process in

which it must first be determined whether there is an underlying medically

determinable physical or mental impairment(s) that could reasonably be expected

12

to produce Mr. Newton's pain or other symptoms. *Id*.  Second, once an underlying impairment could reasonably be expected to produce Mr. Newton's pain or other symptoms, the ALJ must assess the intensity, persistence, and limiting effects of Mr. Newton's symptoms to determine the extent to which they limit his functional limitations. *Id*.

Engaging in this two-step process, the ALJ considered Mr. Newton's alleged bilateral knee pain. *Id*. at 1848.  After considering reports related to diagnostic imaging, steroid injections, and physical evaluations from Dr. Kamlesh Patel, the ALJ determined that Mr. Newton's knee impairment was not severe. *Id*.

The ALJ gave little weight to Dr. Shah's signed form certifying that Mr. Newton is disabled. *Id*.  The ALJ found that there was no description of Mr. Newton's alleged disability and no diagnosis on Dr. Shah's form. *Id*.  The ALJ criticized Dr. Shah's opinion because she provided no function-by-function analysis of Mr. Newton even though the form afforded Dr. Shah the opportunity to describe the reasons for finding disability. *Id*.  Additionally, the ALJ found that the overall record does not support a finding of limitations consistent with disability. *Id*.  The ALJ noted that Mr. Newton's periods of decompensating overlaid with drug and alcohol abuse. *Id*.

13

Regarding Mr. Newton's hallucinations, the ALJ determined, based on Dr. Shah's records, that Mr. Newton has "good insight into these events and realizes these hallucinations are not real." *Id*. Based on Mr. Newton's treatment records from Community Counseling and Dr. Shah's treatment records, the ALJ determined that the occasional auditory hallucinations were insufficient for a finding of disability or meeting the requirements of 12.03 and 12.04. *Id*. The ALJ cited to several of Mr. Newton's medication and psychiatric checkups, occurring from February 2011 to February 2013, as the basis for his determination. *Id*. at 1849-1851.

The ALJ noted that Dr. Shah's records indicate that a majority of Mr. Newton's examinations show that his insight and judgment are within normal limits. *Id*. at 1849-1851. Because the ultimate issue of disability is reserved to the Commissioner, the ALJ afforded little weight to Dr. Shah's opinion. *Id* at 1851. The ALJ believed further clarification was required regarding the issues of specific functional limitations, therefore, he requested additional medical expert testimony from Dr. Ann Monis. *Id*.

The ALJ also considered Dr. LaJeunesse's consultative evaluation, which occurred on March 15, 2013. *Id*. At that evaluation, Dr. LaJeunesse diagnosed Mr. Newton with brief psychotic disorder and depressive disorder. *Id*. Mr. Newton was

14

assigned a GAF of 50.[2] *Id.*  The ALJ noted that Dr. LaJeunesse found Mr. Newton

capable of understanding and carrying out simple instructions but that "he is

markedly impaired in his ability to understand and carry out complex instructions

and make judgment on complex work-related decisions." *Id.*  The ALJ noted Dr.

LaJeunesse's finding that Mr. Newton is markedly limited in his ability to interact

with supervisors, co-workers, and the public because he "cannot keep the pace that

goes on in the type of setting." *Id*.

The ALJ further noted that Dr. LaJeunesse's evaluation was a one-time

occurrence. *Id*.  The ALJ also found that Dr. LaJeunesse provided no basis for a

finding that Mr. Newton cannot keep pace at work. *Id*.  The ALJ determined that

Dr. LaJeunesse's opinion was, at least in part, based on Mr. Newton's physical

---

[2] A GAF score is a numerical summary of a clinician's judgment of an individual's
psychological, social, and occupational functioning on a hypothetical continuum of
mental health on a scale of one hundred.  *See Diagnostic and Statistical Manual of
Mental Disorders*, 32-34 (4th ed. text rev. 2000) (hereinafter "DSM-IV").  The
Social Security Administration has recognized that a claimant's GAF score is not
considered to have a direct correlation to the severity requirements.  *Revised
Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65
FR 50746-01, 50764-65 (Aug. 21, 2001).  However, the administration has noted
that the GAF is the scale used by mental health professionals to "assess current
treatment needs and provide a prognosis."  *Id.*  As such, it constitutes medical
evidence accepted and relied upon by a medical source and must be addressed by
an ALJ in making a determination regarding a claimant's disability.

condition.[3] *Id*.  The ALJ concluded that Dr. LaJeunesse was not qualified to make such a determination because he is a psychologist, not a medical doctor. *Id*.  The ALJ then mentioned Mr. Newton's volunteer work and his active membership in social clubs as evidence that Mr. Newton is not markedly limited. *Id*. at 1851-1852. As such, the ALJ incorporated some of the limitations as noted by Dr. LaJeunesse into Mr. Newton's RFC and afforded moderate weight to his opinion. *Id* at 1852.

The ALJ then shifted his focus to Dr. Fremont's prior testimony before ALJ Zack. *Id*.  Dr. Fremont, a medical expert who testified at Mr. Newton's 2009 hearing, stated that Mr. Newton has depression that meets listing 12.04 because he had marked limitations in all 4 categories of the "B" criteria. *Id*.  The ALJ noted that ALJ Zack properly rejected Dr. Fremont's opinion because Dr. Fremont's opinion was not based on a complete review of all relevant records. *Id*.  Here, the ALJ also found that Dr. Fremont did not have the benefit of the complete record when he testified, nor did he have the benefit of any records after the 2009 hearing. *Id*.  Additionally, the ALJ agreed with ALJ Sweeda that Dr. Fremont's testimony was flawed because Dr. Fremont admitted that his opinion that Mr. Newton met Listing 12.04 was based on his observations during the 2009 oral hearing. *Id*.  The

---

[3] Dr. LaJeunesse opined "he cannot carry very heavy items because of the way all years of carrying [sic] very heavy things has done to his muscles and shoulders." *Id*.

ALJ noted that Dr. Fremont admitted to not having reviewed all of Mr. Newton's records and that he never directly examined Mr. Newton. *Id.*

The ALJ then considered the testimony of Dr. Ann Monis, a state psychologist expert. *Id.* Dr. Monis testified that Mr. Newton's "medically determinable impairments are affective disorder and anxiety-related disorders with co-morbid substance abuse that is ongoing." *Id.* Dr. Monis stated that the affective symptoms of depression, the anxiety symptoms, and the bipolar disorder return without medication management. *Id.* Additionally, Dr. Monis claimed that Mr. Newton has ongoing co-morbid polysubstance abuse and all of his hospitalizations are related to his substance abuse. *Id.* Dr. Monis found that Mr. Newton's records indicate that medication management is effective, and she testified that his discharge GAF scores were in the moderate range at 55. *Id.* Ultimately, the medical expert concluded that when Mr. Newton is in his normal routine and not hospitalized, his limitations are mild affective symptoms. *Id.*

Dr. Monis opined that Mr. Newton does not meet or equal listing 12.04 or 12.06. *Id.* Additionally, Dr. Monis found that, without substance use, Mr. Newton only has mild limitations in understanding, remembering, or applying information. *Id.* Dr. Monis determined that Mr. Newton has moderate limitation interacting with others and he has mild limitations in concentration, persistence, and pace. *Id.*

17

Additionally, Dr. Monis found that Mr. Newton has moderate limitations in adapting or managing himself. *Id*. at 1852-1853.  Dr. Monis opined that Mr. Newton is functionally limited to simple tasks and he has moderate limitations in working with others but is capable of working with co-workers and supervisors. *Id*. at 1853.  The ALJ gave moderate weight to Dr. Monis' opinion.  *Id*.

The ALJ then considered the opinion of Dr. Stephen Evans, Mr. Newton's primary care physician. In his July 8, 2011 opinion, Dr. Evans found that Mr. Newton had "virtually no restrictions." *Id*.  Considering Mr. Newton's reasonable physical complaints, however, the ALJ extended Mr. Newton's limitations to a reduced range of light duty work. *Id*.  Additionally, Dr. Kurt Maas, the state agency physician, reviewed Mr. Newton's records on April 24, 2013. *Id*. at 952-953.  Dr. Maas indicated that Mr. Newton could perform a reduced range of light duty work. *Id*.   The ALJ found this opinion to be supported by the physical examination findings and afforded it significant weight. *Id*. at 1853.

Dr. John Rohar, the state agency psychological evaluator, indicated Mr. Newton had mild limitations in activities of daily living, moderate limitations in social function, and moderate difficulties in maintaining concentration, persistence, and pace. *Id*.  The ALJ noted that this opinion was issued prior to the amendment of the psychological listings and gave it moderate weight. *Id*.  The ALJ noted that

18

there are inherent limitations to the GAF scale and determined that Mr. Newton's GAF score should be accorded little weight. *Id*.  The ALJ remarked that Mr. Newton's GAF score was helpful to review the longitudinal history from the same provider, therefore, the scores would receive some consideration. *Id*.

After considering the record as a whole, the ALJ found that Mr. Newton "is capable of performing a range of light unskilled work within the above parameters." *Id*.  The ALJ determined that Mr. Newton is unable to perform any past relevant work, such as a laborer, banquet set up person, sales associate, and short order cook. *Id*. at 1853-1854.

At step five of the sequential-evaluation process, considering Mr. Newton's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Mr. Newton can perform. *Id*. at 154-1855.  Based on the testimony of the vocational expert, the ALJ concluded that Mr. Newton is capable of making adjustment to other work that exists in significant numbers in the national economy. *Id*. at 1854-1855. Specifically, the ALJ found that Mr. Newton could work as an office helper, in which there are 250 positions in Northeastern Pennsylvania and 74,000 positions nationally. *Id*. at 1855.  Additionally, the ALJ found that Mr. Newton could perform the requirements of a folder, in which there are 155 positions in

19

Northeastern Pennsylvania and 426,000 positions nationally. *Id*.  Therefore, the

ALJ made a finding of not disabled from February 10, 2010, the amended alleged

onset date, through March 22, 2013. *Id*. at 1855.

## V. Discussion.

### A. The ALJ relied on substantial evidence when he accorded little weight to Dr. Shah's opinion and moderate weight to Dr. Monis' opinion.

Mr. Newton claims that the ALJ improperly rejected Dr. Shah's opinion.  He

argues that Dr. Shah's opinion is substantiated by extensive treatment records, as

well as the fact that he has experienced nine required impatient psychiatric

hospitalizations. Additionally, Mr. Newton argues that greater weight should be

given to Dr. Shah's opinion because she was a treating source.  Mr. Newton further

contends that Dr. Monis' opinion, which was given moderate weight, contains

serious deficiencies and is not worthy of significant weight.  Alternatively, the

Commissioner argues that the ALJ reasonably discounted Dr. Shah's opinion and

properly considered Dr. Monis' opinion.

We find that the ALJ's decision to give little weight to Dr. Shah's opinion is

based on substantial evidence.  The ALJ reached this determination after

considering all of the evidence, including the medical evidence and the opinion of

Dr. Monis.  As the ALJ explained, Dr. Shah failed to describe Mr. Newton's

20

alleged disability and provided no diagnosis on the Physician's Statement form. *Id.* at 784-785.  A cursory notation on a check-box form, such as Dr. Shah's form, is insufficient to establish disability.  "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993).

Mr. Newton argues that Dr. Shah's diagnosis is abundantly clear from her treatment records.  He claims that the ALJ's finding of "good insight" is a direct contradiction of Dr. Shah's repeated finding of poor insight; however, under the insight and judgment section of the form, Dr. Shah indicated that Mr. Newton's insight and judgment was "fair." *Admin. Tr.* at 784.  Moreover, Dr. Shah's Physician Statement form indicates that Mr. Newton does not possess suicidal/homicidal thoughts. *Id.*  The ALJ may discount treating source opinions if that opinion contradicts itself. *See Matcheson v. Colvin*, No. 1:16-CV-671, 2017 LEXIS 144065 at *22 (M.D. Pa. Aug. 8, 2017) (noting that an ALJ may discount a treating source's opinion when the treating source contradicts their own opinion).

The ALJ did not assign little weight to Dr. Shah's opinion solely because of her Physician Statement form.  Indeed, the ALJ cited to multiple Dr. Shah examinations, ranging from February 2011 to February 2013. *Admin. Tr.* at 1849-1851.  Throughout these examinations, the ALJ found that "Dr. Shah notes at time

21

the claimant has poor insight and judgment as well, but a good majority of the remainder of his examinations are within normal limits." *Id*. at 1851.  It is clear the ALJ considered Dr. Shah's opinion and the various examinations.  An ALJ may decide what to accept or reject from a medical report, so long as the conclusion is based on substantial evidence. *See Bruce v. Berryhill*, No. 16-CV-629, 2017 WL 2345544 at *3 (W.D. Pa. May 30, 2017) (finding that the ALJ relied on substantial evidence even when he chose to disregard certain elements of a medical report).

Mr. Newton argues that the ALJ erroneously accorded any weight to the opinion of Dr. Monis because of serious deficiencies in her testimony.  Additionally, Mr. Newton claims that Dr. Monis' opinion is undeserving of moderate weight because she never examined or treated Mr. Newton.  We conclude though that the ALJ's decision to afford moderate weight to the opinion of Dr. Monis is based on substantial evidence.

Mr. Newton argues that Dr. Monis' testimony had serious deficiencies because she classified his GAF score of 25 as "something that's more moderate in terms of the symptomatology." *Admin. Tr.* at 1906.  Mr. Newton properly points out that a GAF score of 25 indicates behavior that is considerably influenced by hallucinations or a serious impairment in communication or judgment. *See Schwartz v. Colvin*, No. 3-12-CV-01070, 2014 LEXIS 8206 at *16 n.15 (M.D. Pa.

22

Jan. 23, 2014).  Based on Dr. Monis' testimony, it is unclear what she intended to convey by her description of a 25 GAF score as "something that's more moderate in terms of the symptomatology." *Id.*  While it does not precisely meet the typical definition of a 25 GAF score, it does not disqualify her as a medical expert.  *See Kreitzer v. Colvin*, No. 1:15-CV-01667, 2016 LEXIS 135347 at *24-25 (M.D. Pa. Sept. 30, 2016) (noting that state agencies use medical experts who are highly qualified and experts in social security disability evaluation).

Dr. Monis reviewed Mr. Newton's complete record from 2008 through 2013. *Admin Tr.* at 1848.  While Dr. Monis did not physically examine Mr. Newton, a medical expert's opinion is often deserving of significant consideration. "The ALJ is permitted to give great weight to a medical expert's opinion if the assessment is well-supported by the medical evidence of record." *Leese v. Berryhill*, No. 1:17-CV-1634, 2018 LEXIS 156443 at *21 (M.D. Pa. June 12, 2018) (citing *Sassone v. Comm'r of Soc. Sec.*, 165 F. App'x 954, 961 (3d Cir. 2006)).

While an in-person examination is preferable, the ALJ is not prohibited from considering a non-treating source's opinion, even when that opinion conflicts with a treating physician's opinion.  "Where the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, an ALJ may choose whom to

23

credit but cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317-318 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).  Here, the ALJ provided sufficient reasoning as to why he assigned moderate weight to Dr. Monis' opinion, even if elements of her opinion conflicted with Dr. Shah's report.  Therefore, the ALJ relied on substantial evidence when he accorded moderate weight to Dr. Monis' opinion.

**B.  The ALJ's consideration of Dr. LaJeunesse's opinion is based on substantial evidence.**

Mr. Newton claims that the ALJ erred when he failed to credit the opinion of Dr. LaJeunesse.  Mr. Newton argues that the ALJ failed to explain why he rejected Dr. LaJeunesse's opinion, specifically, Dr. LaJeunesse's finding that Mr. Newton is markedly limited in his ability to adapt to changes in a routine work setting.  Additionally, Mr. Newton asserts that Dr. LaJeunesse's finding that he "cannot keep pace" is supported by substantial evidence, including Dr. Shah's treatment records.  Alternatively, the Commissioner argues that the ALJ cited valid reasons for discounting Dr. LaJeunesse's opinion.

Contrary to Mr. Newton's assertion, the ALJ did address Dr. LaJeunesse's finding that Mr. Newton is markedly limited in his ability to adapt to changes in a routine work setting.  While the ALJ did not specifically mention Dr. LaJeunesse's

24

finding, the record is clear that the ALJ considered Dr. LaJeunesse's opinion and weighed it against conflicting opinions. *Admin. Tr.* at 1853.  The ALJ gave moderate weight to Dr. Rohar's opinion that Mr. Newton is moderately limited in responding to change in the work setting. *Id*. at 955.  Additionally, the ALJ accorded moderate weight to Dr. Monis' opinion that Mr. Newton would have some limitations in a work setting with frequent changes. *Id*. at 1853.  Finally, the ALJ also considered the opinion of Dr. Evans, Mr. Newton's primary care physician, who opined that he had virtually no restrictions. *Id*.

The ALJ did not reject evidence for no reason.  Instead, he considered all of the evidence from all relevant sources.  Dr. LaJeunesse's opinion that Mr. Newton is markedly limited in his ability to adapt to changes in a routine work setting was not rejected.  Instead, it was accorded moderate weight.  The ALJ then properly considered the opinions of Dr. Monis, Dr. Rohar, and Dr. Evans.  All three medical experts disagreed with Dr. LaJeunesse's opinion that Mr. Newton is markedly limited.  It is within the ALJ's authority to decide how opinions are weighted. *See Velez* v. *Colvin*, No. 12-CV-7592, 2013 WL 6840515 at *10 (D.N.J. Dec. 23, 2017) ("[T]he ALJ took into account the entire record and arrived at a decision after weighing all conflicting evidence. Thus, even if this Court would have

weighed the evidence differently, it cannot disturb the Commissioner's final decision on this basis.").

The ALJ relied on substantial evidence when he concluded that Dr. LaJeunesse provided no basis for a finding that Mr. Newton "cannot keep pace" when dealing with people. *Admin. Tr.* at 1852.  Mr. Newton argues that Dr. LaJeunesse's examination findings provide substantial evidentiary support for his opinion, along with Dr. Shah's treatment records.  Here, the ALJ considered those opinions along with other contradicting evidence that supported a different finding. Namely, the ALJ relied on Mr. Newton's own testimony that he volunteers at a soup kitchen, church, and masonic lodge. *Id*. at 1851.

The ALJ also considered the opinion of Dr. Monis, who found that Mr. Newton has moderate limitations when interacting with others and mild limitations in concentration, persistence, and pace. *Id*. at 1852.  Finally, the ALJ accorded moderate weight to Dr. Rohar's opinion that Mr. Newton is moderately limited in social functioning and has moderate difficulties in maintaining concentration, persistence, and pace. *Id*. at 1853.

The ALJ did not disregard Dr. LaJeunesse's opinion for a wrong or nonexistent reason.  Instead, the ALJ properly considered the full scope of opinions and evidence.  Additionally, the ALJ considered the daily activities of Mr.

26

Newton and found that they contradict Dr. LaJeunesse's opinion. "The Social Security Administration explicitly allows ALJs to assign less weight to treating sources when daily activities contradict an opinion." *Loffreda v. Colvin*, No. 4:15-CV-00896, 2017 LEXIS 100123 at *20-21 (M.D. Pa. May 3, 2017) (citing Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at *36936). Therefore, the ALJ's consideration of Dr. LaJeunesse's opinion was based on substantial evidence.

### C. The ALJ's disregard of Dr. Fremont's opinion is based on substantial evidence.

Mr. Newton argues that the ALJ erroneously rejected Dr. Fremont's testimony at the 2009 hearing. He claims that Dr. Fremont clearly opined that Mr. Newton's mental disorder meets the requirement of the Listing of Impairments. Alternatively, the Commissioner argues that the ALJ reasonably discounted Dr. Fremont's 2009 opinion.

Based on the record, it is clear the ALJ determined that Dr. Fremont's testimony was made without review of the entire record. *Admin. Tr.* at 1852. It is proper for an ALJ to assign little weight to an opinion that has not had the benefit of the complete record. *Soli v. Astrue*, No. 08-CV-3483, 2010 LEXIS 73826 at *19 (E.D. Pa. July 22, 2010) (finding that remand is warranted because the ALJ relied

on a medical expert who had not reviewed the complete record).  Furthermore, the ALJ properly obtained a new medical expert to review Mr. Newton's entire psychiatric record and make a subsequent assessment regarding Mr. Newton's mental condition.  Accordingly, the ALJ's decision to disregard Dr. Fremont's opinion is based on substantial evidence.

### D. The ALJ's hypothetical question to the vocational expert was based on substantial evidence.

Mr. Newton argues that the ALJ's hypothetical question to the vocational expert was improper because it did not include all of Mr. Newton's limitations. Specifically, Mr. Newton takes issue with the ALJ's allocation of weight regarding Dr. Shah, Dr. LaJeunesse, and Dr. Fremont's respective opinions and how that impacted the vocational expert's hypothetical question.  Alternatively, the Commissioner argues that the hypothetical question to the vocational expert contained all of Mr. Newton's credibly established functional limitations.

At step five of the sequential evaluation process, the ALJ relied on the testimony of the vocational expert.  "It is well established that a hypothetical posed to a VE 'must reflect *all* of a claimant's impairments' and that 'great specificity' is required when an ALJ incorporates a claimant's limitations into a hypothetical." *Keefer v. Astrue*, No. 3:12-CV-1665, 2014 WL 1095726, at *5 (M.D. Pa. Mar. 19,

2014) (quoting *Ramirez v. Barnhart,* 372 F.3d 546, 554 (3d Cir. 2004) (emphasis

in original) (citations and internal quotation marks omitted).  The United States

Court of Appeals for the Third Circuit has concluded that a vocational expert's

testimony is not substantial evidence if the ALJ did not include in the hypothetical

to the vocational expert all of the claimant's impairments:

> Discussing hypothetical questions posed to vocational experts, we
> have said that "[w]hile the ALJ may proffer a variety of assumptions
> to the expert, the vocational expert's testimony concerning a
> claimant's ability to perform alternative employment may only be
> considered for purposes of determining disability if the question
> accurately portrays the claimant's individual physical and mental
> impairments." [*Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.
> 1984)]. A hypothetical question posed to a vocational expert "must
> reflect *all* of a claimant's impairments." *Chrupcala v. Heckler,* 829
> F.2d 1269, 1276 (3d Cir. 1987) (emphasis added).  Where there exists
> in the record medically undisputed evidence of specific impairments
> not included in a hypothetical question to a vocational expert, the
> expert's response is not considered substantial evidence. *Podedworny,*
> 745 F.2d at 218 (citing *Wallace v. Secretary of Health & Human
> Servs.,* 722 F.2d 1150, 1155 (3d Cir. 1983)).

*Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002).  But an ALJ is not required

"to submit to the vocational expert every impairment *alleged* by a claimant."

*Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (italics in original).

Rather, "the ALJ must accurately convey to the vocational expert all of a

claimant's *credibly established limitations.*" *Id*. (italics in original) (citation and

footnote omitted).

Having established that the ALJ properly considered and weighed the opinions of Dr. Shah, Dr. LaJeunesse, and Dr. Fremont, the ALJ did not exclude any credibly established limitations in his hypothetical question to the vocational expert. Therefore, the ALJ's hypothetical question to the vocational expert was based on substantial evidence.

### E. The ALJ's RFC assessment for Mr. Newton's non-severe knee impairment is based on substantial evidence.

Mr. Newton argues that the ALJ failed to consider his knee impairment, which limited him to sedentary work and should have been incorporated into his RFC assessment. Specifically, Mr. Newton claims that the ALJ erred in step two of his analysis when he failed to list the knee impairment as severe. Mr. Newton asserts that the ALJ was improperly influenced by his own finding at step two and this resulted in a non-severe classification. Alternatively, the Commissioner argues that the ALJ fully considered and accounted for Mr. Newton's knee impairment in the RFC assessment.

Mr. Newton's argument is unpersuasive because he alleges no facts that indicate the step two finding was detrimental to his RFC assessment. "Assuming *arguendo* the ALJ erred by not listing radiculopathy as a severe impairment, Plaintiff has the burden of showing that the error was harmful."

30

*Laucella v. Berryhill*, No. 3:17-CV-2019, 2018 LEXIS 118757 at *36 (M.D. Pa. July 17, 2018) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (1969)). (italics in original).  Mr. Newton has not provided specific evidence that indicates the step two finding caused an error in the ALJ's RFC assessment.

Additionally, the ALJ properly considered all the relevant medical evidence regarding Mr. Newton's knee impairment.  In reaching this decision, the ALJ referenced x-ray examinations, the findings of the consultative examiner, and the opinion of the state agency medical consultant. *Admin. Tr.* at 1847-1848.  As such, the ALJ provided adequate justification for his finding of non-severe impairment. Therefore, the ALJ's decision to classify Mr. Newton's knee impairment as non-severe is based on substantial evidence.

## VI.  Order.

Accordingly, for the foregoing reasons, **IT IS ORDERED** that the plaintiff's request for relief is **denied** and the Commissioner's final decision denying Mr. Newton's claims is **affirmed**.  The Clerk of Court shall enter judgment in favor of the Commissioner of Social Security and against the plaintiff.

<u>***S/Susan E. Schwab***</u>
Susan E. Schwab
Chief United States Magistrate Judge

31